UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HEATHER HORN, : | |
| : | Civil Action No. 5:14-cv-3699 |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| LIFE INSURANCE COMPANY OF : | |
| NORTH AMERICA, : | |
| Defendant. : | |

**JOSEPH F. LEESON, JR.**                                                                                July 20, 2015
**United States District Judge**

## MEMORANDUM OPINION AND ORDER

**Plaintiff's Motion for Summary Judgment, ECF No. 21 –
Granted in Part and Denied in Part
- and -
Defendant's Motion for Summary Judgment, ECF No. 24 – Denied**

I.      INTRODUCTION

Plaintiff Heather Horn seeks payment of long-term disability benefits by Defendant Life Insurance Company of North America pursuant to Section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Before the Court are the parties' cross-motions for summary judgment. For the reasons that follow, the Court will deny Defendant's motion, grant Plaintiff's motion in part and deny her motion in part, and remand the case to Defendant to determine whether Plaintiff is eligible to continue to receive disability benefits after twenty-four months pursuant to the "any occupation" standard.

1

II.      FACTS

    A.      Long-Term Disability Policy

Plaintiff was employed by Susquehanna Bancshares, Inc., as a Card Services Specialist, a position that required her to read banking records on a computer and communicate with customers. Administrative Record ("R.") at 416-20, ECF No. 31. Defendant provided long-term disability ("LTD") coverage for Susquehanna Bancshares employees. The LTD policy defines "disabled" as follows:

> [a]n employee is Disabled if, because of Injury or Sickness, (1) he or she is unable to perform the material duties of his or her regular occupation, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings; and (2) after Disability Benefits have been payable for 24 months, he or she is unable to perform the material duties of any occupation for which he or she may reasonably become qualified based on education, training or experience, and solely due to Injury or Sickness, he or she is unable to earn more than 80% of his or her Indexed Covered Earnings.

R. at 570.

Before benefits will be paid, "[s]atisfactory proof of Disability must be provided to the Insurance Company at the Employee's expense." R. at 574. Further, in order to receive benefits, "[a] Disabled Employee must satisfy the Benefit Waiting Period and be under the Appropriate Care of a Physician." R. at 574. The "Benefit Waiting Period" is "the period of time an Employee must be continuously Disabled before Disability Benefits may be payable." R. at 574. In Plaintiff's case, the waiting period was 180 days, starting August 24, 2012, the day Plaintiff stopped working, and ending on February 20, 2013. R. at 214, 570; Def.'s Statement of Material Facts ¶ 13, ECF No. 25. Additionally, the policy provides that "[t]he Insurance Company will require continued proof of the Employee's Disability for benefits to continue." R. at 574.

B.     Plaintiff's Medical History and Defendant's Review

In May 2011, Plaintiff underwent a cervical fusion procedure performed by orthopedic surgeon Dr. Keith Kuhlengel. R. at 526. Following the surgery, Plaintiff continued to report neck, shoulder, and upper arm pain. R. at 526. Her post-surgical treatment included a regimen of opiate pain medications. R. at 526. In summer 2012, a cervical diskogram of Plaintiff's cervical spine indicated no concordant aggravation of pain. R. at 529-30. Plaintiff stopped working on August 24, 2012, and has not worked since that time. R. at 526. In a note dated August 29, 2012, Dr. Kuhlengel wrote, "due to [Plaintiff's] pain she was unable to work on 8/24/12." R. at 527.

Plaintiff applied for short-term disability benefits from Defendant beginning on August 31, 2012. R. at 325. On September 25, 2012, in response to an inquiry from Defendant, Dr. Kuhlengel filled out a "Medical Request Form" describing his treatment and diagnosis of Plaintiff. R. at 526. In response to a question asking for the patient's "primary diagnosis," Dr. Kuhlengel wrote that Plaintiff suffered from cervicalgia and cervical facet arthropathy. R. at 526. Dr. Kuhlengel listed "neck, shoulder, [and] upper arm pain" as "the specific additional factors impacting return to work." R. at 526. When asked for the "specific restrictions that you have placed on your patient," Dr. Kuhlengel answered "no work beginning 8-24-12." R. at 526. In response to a question asking whether "your patient [could] return to work at this time if accommodations were made for the listed restrictions," Dr. Kuhlengel checked the box marked "No" and wrote that Plaintiff suffers from "continued pain" which she was "actively treating [with] Robert Chen, MD." R. at 526. Dr. Kuhlengel estimated that Plaintiff would be out of work "at least thru Nov/Dec. 2012 after treatment from Dr. Chen." R. at 526.

The administrative record before the Court includes a report from Dr. Chen following his treatment of Plaintiff on September 21, 2012. R. at 508-09. Dr. Chen wrote that Plaintiff was

3

"alert and oriented" and "in no apparent distress" during the treatment session. R. at 508. He also reported that Plaintiff "has been suffering with neck pain" and "continues to complain of neck pain radiating into her right shoulder, upper extremity, with spams into her mid back as well as symptoms into her arms, including numbness and tingling." R. at 508. Dr. Chen concluded that "[i]t is our impression that [Plaintiff] is an unfortunate woman with neck pain . . . . [She] continues with persistent neck pain radiating into her shoulders." R. at 509. He noted "the nebulous nature of her complaints with no concordant radiographic findings." R. at 509.

      The record also includes additional reports from Dr. Kuhlengel concerning Plaintiff's follow-up visits in October and November 2012. Following Plaintiff's October 31, 2012 visit, Dr. Kuhlengel reported that Plaintiff "returns for follow-up of neck pain which radiates into both shoulders and down both upper extremities into the forearms and hands with associated tingling" and that she "is unable [to] tolerate sitting or working at a computer for more than a few minutes." R. at 488. Dr. Kuhlengel again saw Plaintiff on November 28, 2012, and reported that Plaintiff "returns for follow-up of neck pain which now radiates up into the sides of her face and temporal regions. She also describes pain into the shoulders into her scapular region and down into the lumbar region at times; the pain continues to radiate down both upper extremities into the forearms and hands." R. at 460. He found that "on exam she has diffuse muscle tenderness in the neck, shoulders, and upper extremities." R. at 460. He also reported that "MRI, bone scan with SPECT imaging, and most recently EMG/nerve conduction studies . . . were normal," and that he had not "identified any structural abnormality that surgery would improve." R. at 460. He stated that he "discussed [with Plaintiff] her work capabilities, [and concluded that] with her current pain level and its diffuse nature, she cannot return to her previous duties at this time." R. at 460.

By a letter dated October 18, 2012, Defendant approved Plaintiff's claim for short-term disability benefits from August 31, 2012, through November 15, 2012, with the opportunity to extend the leave if she were still disabled at the end of that period. R. at 325-26. In early December 2012, Defendant conducted a review of Plaintiff's medical records and concluded that there were no diagnostic tests or other documented clinical findings to support a continued disabling condition. R. at 144-46. By a letter dated December 6, 2012, Defendant terminated Plaintiff's short term disability benefits effective November 15, 2012. R. at 312-14.

In February 2013, Plaintiff appealed to Defendant the termination of her short-term benefits. R. at 451. In support of her appeal, she provided a medical report from Dr. Catherine Edmonds of Manor Family Health Center, dated January 28, 2013. R. at 451-53. Dr. Edmonds wrote that Plaintiff "has developed persistent neck pain that has not responded to treatment" and that this "chronic severe pain has also led to depression." R. at 452. Dr. Edmonds explained that "[w]hile the neurosurgery group is prescribing [Plaintiff's] pain medications, [her] office has been involved in treating [Plaintiff's] depression." R. at 452. Dr. Edmonds further reported that

> [d]espite [Plaintiff's] compliance with [her] treatment plan, she continues to suffer severe limitations in her functional capacity throughout the day. She exhibits labile emotions, sadness, hopelessness, lack of concentration. She is unable to sit in one position for any extended length of time. Her sleep is fractured and not restful. Her pain medications leave her sedated and add to her difficulty with focus. This has affected her family and her work life significantly.

R. at 452. Dr. Edmonds concluded that "[a]t this time, I do not feel that [Plaintiff] is able to fulfill the duties of her job description" and that, absent clinical improvement, "her medical condition prevents her from continuing her current occupation." R. at 452.

Plaintiff also submitted to Defendant a letter from her rheumatologist, Dr. Thomas V. Kantor, dated March 5, 2013, stating that Plaintiff

5

>is a patient whom I have followed since 12/04/12 with polyarthralgias, degenerative arthritis in the cervical spine despite cervical surgery as well as fibromyalgia, depression and osteopenia. She has had ongoing pain and has objective evidence of facet degenerative arthritis in her cervical spine on a bone scan. Because of this and her concomitant depression she is unable to perform her job.

R. at 447. The administrative record includes additional reports from Dr. Kantor from January, February, March, and April 2013. R. at 434-42. In January 2013, Dr. Kantor reported that Plaintiff "continues to have pain at 8/10. It is worse in the neck. She has diffuse pain as well above and below the waist, right and left side of the body." R. at 441. In February 2013, he reported that Plaintiff's "pain is unchanged from her initial presentation" at a level of 8/10. R. at 439. Similarly, Dr. Kantor's reports from March and April 2013 stated that Plaintiff's pain levels remained at 8/10 or above. R. at 433-37. In Dr. Kantor's April 2013 report, he observed that Plaintiff's pain "affected her activities of daily living" and found that despite pain medication "she still has significant symptoms overall." R. at 435.

In March 2013, Dr. Paul Seiferth, a Medical Director for Defendant, reviewed Plaintiff's medical records and determined that they did not support the restrictions and limitations imposed by Plaintiff's treating doctors. R. at 134-36. By a letter dated March 28, 2013, Defendant denied Plaintiff's appeal due to a lack of "sufficient clinical findings to support the no work restrictions." R. at 300.

By a letter dated May 31, 2013, Plaintiff submitted to Defendant a second appeal of the decision to terminate her short-term benefits. R. at 421. In support of her appeal, she submitted a letter dated May 9, 2013, from Megan L. Sabol of Hartz Physical Therapy, who provided physical therapy to Plaintiff in 2011 and again in March and April 2013. R. at 429-30. Ms. Sabol reported that at the time of Plaintiff's visits in March and April 2013, Plaintiff reported pain levels of 8/10 to 9/10 and suffered from weight loss and decreased appetite secondary to pain,

poor sleep, and depression. R. at 429-30. Ms. Sabol stated that "[f]rom the start, [Plaintiff] was highly motivated to get back to work as well as get back to a 'normal' life with her husband, daughters, and dog," and that she "fully trust[ed] [Plaintiff's] reports." R. at 430. She concluded by observing that, in Plaintiff's "most recent episode of care," on April 11, 2013, "it was made clear that [Plaintiff] is barely tolerating her functions as a wife and mother and would not be able to sit at a desk for 8 hours per day." R. at 430.

In early August 2013, Dr. Nick Ghaphery, another Medical Director for Defendant, reviewed the medical documentation related to Plaintiff's short-term benefits appeal and concluded that, "[a]lthough there are no quantified measurable strength or functional deficits, the letter from [physical therapist Megan Sabol], indicating that the neck pain is at a level that interferes with daily activity, and that [Plaintiff] would not be capable of performing an 8 hour a day job along with bone scan evidence of severe degenerative changes [led him to conclude that] the restrictions are supported." R. at 111-12. He went on to state that "[a]t some point an IME [independent medical examination] may be warranted." R. at 111-12. By a letter dated August 6, 2013, Defendant restored Plaintiff's short-term disability benefits, approving benefits (which had begun on August 31, 2012) through February 28, 2013, the maximum period of time for short-term benefits under the policy. R. at 270, 280-82. Defendant further notified Plaintiff that because she had reached the maximum period for short-term benefits her claim would be "transitioned for consideration of your eligibility for Long Term Disability benefits." R. at 270.

Accordingly, in August 2013, Plaintiff applied for long-term disability benefits, which is the claim in dispute in the present case. R. at 260. In September 2013, following a review by Defendant's Associate Medical Director Dr. R. Norton Hall and other personnel, R. at 54-55, Defendant denied Plaintiff's claim for long-term benefits, stating by letter that "a cervical

7

diskogram indicated no concordant aggravation of pain" and "[s]pecial imagery studies of the cervical and thoracic spine revealed evidence of degenerative changes consistent with age but no neural compression and there was no abnormality." R. at 232-33. The letter further stated that Plaintiff's treating providers "do not give any measurable findings to support a functional or psychiatric impairment that would preclude [Plaintiff] from working [in her] own occupation at this time." R. at 233.

In October 2013, Plaintiff appealed the denial of her long-term disability claim. R. at 376. In early February 2014, at the request of Defendant, Dr. Marcus J. Goldman, a board-certified physician in psychiatry, completed an independent peer review of Plaintiff's records. R. at 365-71. Dr. Goldman concluded that "[d]ata from 2012 through the first part of 2013 revealed nothing in the way of overt psychopathology" and that "impairment can be adequately supported from 07/26/13 through 09/02/13 only," a period in which Plaintiff underwent in-patient mental health treatment for opioid addiction. R. at 369-370. In addition to Dr. Goldman's review of Plaintiff's psychiatric records, Dr. Seiferth – the Medical Director who had previously reviewed Plaintiff's medical records in connection with her claim for short-term disability benefits in March 2013 – again reviewed Plaintiff's physical medical records on behalf of Defendant and concluded that "there are no measured strength deficits, range of motion deficits, or sensory deficits" and that "provocative testing . . . did not reveal a concordant pain finding and electrodiagnostic studies are noted as normal." R. at 15-17.

By a letter dated February 21, 2014, Defendant denied Plaintiff's LTD appeal, stating that Plaintiff's psychiatric records did not "consistently demonstrate a global impairment" and that her physical medical records were not "consistent with a functional impairment that would preclude [Plaintiff] from performing her own occupation." R. at 214-15.

Following Defendant's denial of her LTD appeal, Plaintiff commenced this action by filing a complaint in May 2014 in the Court of Common Pleas of Lancaster County, Pennsylvania, alleging that Defendant's denial of her long-term disability claim was arbitrary and capricious and in violation of Plaintiff's rights under ERISA, and seeking that an order be issued awarding Plaintiff her LTD benefits along with costs, interest, and attorneys' fees. ECF No. 1. The action was removed upon motion of the Defendant to this Court. ECF No. 1. The parties filed cross-motions for summary judgment and the matter was fully briefed. ECF Nos. 21-26, 28, 32-34. Oral argument on the motions was held on June 11, 2015.

III.    STANDARD OF REVIEW

    A.    Summary Judgment Standard

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if the fact "might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," id. When the evidence favoring the nonmoving party is "merely colorable" or "not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). The parties must support their respective contentions—that a fact cannot be or is genuinely disputed—by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

B.  ERISA Standard

Plaintiff has brought this action under section 502(a)(1)(B) of ERISA, which permits a participant or beneficiary of a covered policy to bring a civil action to recover the benefits due under the terms of the policy. 29 U.S.C. § 1132(a)(1)(B). Generally, the court must review the denial of benefits "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). "If the plan gives the administrator or fiduciary discretionary authority to make eligibility determinations," the court must review its decision "under an abuse-of-discretion (or arbitrary and capricious) standard." Viera v. Life Ins. Co. of N. Am., 642 F.3d 407, 413 (3d Cir. 2011) (citations omitted).

Here, the parties agree that the Court should apply a de novo standard of review. See also Viera, 642 F.3d at 414–18 (3d Cir. 2011) (holding that policy language requiring "proof satisfactory" to the insurance company for a finding of disability did not shield the insurance company from de novo review). The role of the court "is to determine whether the [plan] administrator . . . made a correct decision," and the administrator's decision "is accorded no deference or presumption of correctness." Id. at 413-14. In sum, "[t]he court must review the record and determine whether the administrator properly interpreted the plan and whether the insured was entitled to benefits under the plan." Id. at 414.

IV.     ANALYSIS

Plaintiff argues that "the medical evidence supports the [conclusion] that Plaintiff is disabled from her occupation," citing in particular the reports of Dr. Kantor, Dr. Kuhlengel, and Dr. Edmonds. Pl.'s Mem. Supp. Summ. J. 1, 11-13, ECF No. 22. Defendant contends that Plaintiff has failed to provide satisfactory proof that she was disabled from her occupation "at any time, and certainly not during the Benefit Waiting Period of August 2012 – February 2013," as required by the policy. Def.'s Mem. Supp. Mot. Summ. J. 10, ECF No. 24. According to Defendant, "the documents submitted by Plaintiff simply did not show evidence linking Plaintiff's symptoms to a loss of ability to adequately function in her occupation." Id. Defendant argues that Plaintiff's treating physicians "provided only generalized statements that the Plaintiff was in pain" and "did not provide any analysis as to how this pain would prevent her from performing her actual, sedentary job duties." Id.

It is well established that "pain in itself may be disabling." Brown v. Cont'l Cas. Co., 348 F. Supp. 2d 358, 367 (E.D. Pa. 2004) (citing Chrupcala v. Heckler, 829 F.2d 1269, 1276 n.10 (3d Cir. 1987) ("Pain itself may constitute a disabling impairment."); Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981)). "Nonetheless, where claims as to the existence or degree of subjective pain are unsubstantiated, the plan administrator has the discretion to disregard them." Eppley v. Provident Life & Acc. Ins. Co., 789 F. Supp. 2d 546, 572 (E.D. Pa. 2011). In Black & Decker Disability Plan v. Nord, 538 U.S. 822 (2003), the Supreme Court held that ERISA does not require plan administrators to "accord special deference to the opinions of treating physicians. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion." Id. at 831. However, Nord "does [not] insulate plan decision makers whenever they reject a treating physician's opinion in favor of a consultant's opinion."

11

Matson v. AXA Equitable Life Ins. Co., No. 10-cv-5361, 2011 WL 4345848, at *7 (E.D. Pa. Sept. 15, 2011) (alteration in original) (quoting Kaufman v. Metro. Life Ins. Co., 658 F. Supp. 2d 643, 649 (E.D. Pa. 2009)) (internal quotation marks omitted). The court "may still evaluate the weight of each doctor's opinion based on the extent of his or her treatment history with the patient. . . ." Brown v. Cont'l Cas. Co., 348 F. Supp. 2d 358, 368 (E.D. Pa. 2004). Moreover, where a disease is "subjective and variable," direct contact with a patient over an extended period of time seems "especially important" since it can allow "more thorough examination of the patient's credibility and true range of abilities." See id.

Having reviewed the record, the Court concludes that Defendant erred and that Plaintiff produced evidence satisfactory to show that she was disabled under Defendant's policy. As detailed above, Plaintiff's treatment providers consistently found, throughout the duration of the Benefit Waiting Period and beyond, that Plaintiff suffered from persistent and severe pain that rendered her unable to perform her job. Following Dr. Kuhlengel's initial assessment of Plaintiff's disability in August and September 2012, his follow-up reports from Plaintiff's visits in October and November 2012 show that Plaintiff continued to suffer from pain that rendered her unable to return to her job. Specifically, following Plaintiff's October 2012 visit, Dr. Kuhlengel reported that Plaintiff was "unable tolerate sitting or working at a computer for more than a few minutes," R. at 488, and following her November 2012 visit he reported that he "discussed [with Plaintiff] her work capabilities [and concluded that] with her current pain level and its diffuse nature, she cannot return to her previous duties at this time." R. at 460. In January 2013, Dr. Edmonds reported that Plaintiff suffered "chronic severe pain [which] has also led to depression" as well as "severe limitations in her functional capacity throughout the day" which resulted in her being "unable to sit in one position for any extended length of time" and unable to

"continu[e] her current occupation." R. at 452. Likewise, in Dr. Kantor's March 5, 2013, letter he stated that Plaintiff was "unable to perform her job" due to "ongoing pain" and "concomitant depression." R. at 447. Although this letter was dated a few weeks after the close of the Benefit Waiting Period, it is supported by Dr. Kantor's reports in January and February 2013, both of which found that Plaintiff suffered from pain levels at "eight" or higher on a scale of one to ten. R. at 434-42. Finally, it is clear from Dr. Kantor's reports in March and April 2013 and Ms. Sabol's report in May 2013 that Plaintiff's disability persisted beyond the close of the Benefit Waiting Period. R. at 429-30. Indeed, it was partially on the basis of Ms. Sabol's report that in August 2013 one of Defendant's own medical directors, Dr. Ghaphery, found that Plaintiff suffered from "neck pain . . . at a level that interferes with daily activity," which rendered her incapable of "performing an 8 hour a day job." R. at 111-12.[1]

In its briefing before this Court, Defendant does not directly challenge the notion that Plaintiff was in pain, but rather contends that Plaintiff's physicians failed to articulate how Plaintiff's pain prevented her from performing her job. However, as noted above, pain in itself may be disabling, and Dr. Kuhlengel, Dr. Edmonds, and Ms. Sabol each identified specific ways in which Plaintiff's pain affected her ability to work. In view of this consistent and detailed evidence from Plaintiff's treatment providers, and in the context of a de novo review, this Court finds that Plaintiff has offered satisfactory proof of her disability pursuant to Defendant's policy.

---

[1] Defendant argues that "[t]he record reviewed by [Defendant] on Plaintiff's LTD claim was different from and more expansive than the record that had been reviewed by Dr. Ghaphery on the short term disability claim." Def.'s Mem. Supp. Mot. Summ. J. 17. Defendant does not further explain, however, how the records differed in content and scope, or why this difference should call into question Dr. Ghaphery's conclusions as to Plaintiff's condition.

V.      REMEDIES

    A.      Award of Benefits

The Court finds that Plaintiff was entitled to benefits under the plan and will award retroactive benefits for the twenty-four months following the benefit start date of February 20, 2013.[2] See Heim v. Life Ins. Co. of N. Am., No. 10-cv-1567, 2012 WL 947137, at *13 (E.D. Pa. Mar. 21, 2012) (finding that "in a case such as this one, where [the plaintiff] has provided the policy-required 'satisfactory proof' that she is disabled, benefits must be awarded").

    B.      Mental Health and Substance Abuse Limitation

Defendant argues that if the Court finds that Plaintiff is entitled to benefits, it would be appropriate to remand the case to Defendant so that it may determine whether Plaintiff's disability includes either (1) drug addiction or abuse, or (2) mental illness, in view of the policy's requirement that a disability "caused by, or contributed to by" these conditions will be paid only on a "limited basis" for no more than twenty-four months. Def.'s Mem. Supp. Mot. Summ. J. 19; R. at 575.

This district addressed a similar policy restriction in White v. Prudential Insurance Co. of America, 908 F. Supp. 2d 618 (E.D. Pa. 2012), in which the plaintiff suffered a traumatic brain injury in a rollover automobile accident and, as a result of the injury, suffered from depression and anxiety. The plaintiff's insurance policy included a limitation with respect to disabilities "due in whole or part to mental illness." Id. at 630 (emphasis omitted). In reviewing the applicability of this limitation, the court found that "the pertinent question is whether [the plaintiff's] depression and anxiety are sequelae or components of a physical disease or condition caused by the accident. If the depression and anxiety stem from a physical disease or condition,

---

[2] See R. at 238 (identifying the "benefit start date" as February 20, 2013).

the twenty-four month limitation will not apply." Id. Otherwise, "whenever a claimant's physical disease or condition causes anxiety and depression, the mental illness limitation would always apply." Id. (quoting Morgan v. Prudential Ins. Co. of Am., 755 F. Supp. 2d 639, 645 (E.D. Pa. 2010)). The court noted that this analysis "advances the congressional objectives of ERISA," id., which was enacted "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits," id. (quoting Nord, 538 U.S. at 830) (internal quotation marks omitted).

Similarly here, a review of the record shows that to the extent Plaintiff suffered from prescription drug addiction or depression, these conditions followed and resulted from the chronic and severe pain that had already rendered Plaintiff disabled. For example, Dr. Edmonds wrote that Plaintiff's "chronic severe pain has also led to depression," R. at 452 (emphasis added), and Dr. Kantor found that Plaintiff was disabled because of her "ongoing pain . . . and her concomitant depression," R. at 447 (emphasis added). Likewise, Dr. Goldman, in his review of Plaintiff's file in February 2014, found that "[d]ata from 2012 through the first part of 2013 revealed nothing in the way of overt psychopathology." R. at 369. It was only after this period of time that Plaintiff's mental health worsened and she underwent treatment for opioid addiction. R. at 365-371. Accordingly, because Plaintiff's depression and drug addiction stemmed from a physical condition, namely her chronic and severe pain, that had already rendered her disabled, the twenty-four month limitation does not apply.

C.     Remand for Disability Determination Under the "Any Occupation" Standard

In order for Plaintiff to continue to receive disability benefits after twenty-four months, the policy requires that she be unable to perform the material duties of "any occupation" for which she may reasonably become qualified. R. at 570. Defendant argues that because Defendant

reviewed Plaintiff's claim under the twenty-four month "own occupation" standard, the issue of whether Plaintiff could perform "any occupation" is not yet ripe for adjudication. Def.'s Mem. Supp. Mot. Summ. J. 19. Accordingly, Defendant argues that if the Court finds that Plaintiff is entitled to benefits under the "own occupation" standard, the Court should nevertheless remand the case to Defendant for determination of whether Plaintiff was disabled under the "any occupation" standard as of the date that standard would have taken effect, i.e., in February 2015. Id. Plaintiff acknowledges that "this Court's decision [in the present case] will not prevent [Defendant] from performing the 'any occupation' review that it is entitled to perform pursuant to the terms of the plan," but argues that Plaintiff "should not have her benefits suspended as a result of a delay caused by [Defendant's] conduct." Pl.'s Br. Opp'n Def's Mot. Summ. J. 12, ECF No. 28.

Here, as in Heim v. Life Insurance Company of North America, No. 10-cv-1567, 2012 WL 947137 (E.D. Pa. Mar. 21, 2012), the "parties' briefs address [Plaintiff's] ability to perform her own occupation and do not discuss her ability to perform any occupation." Id. at *15. Accordingly, the Court will award Plaintiff benefits for the initial twenty-four month period but will remand the case to Defendant for determination of whether Plaintiff was disabled as of the date the "any occupation" standard would have taken effect. See id.

    D.    Prejudgment Interest and Attorneys' Fees

In addition to long-term disability benefits, Plaintiff also seeks interest on the unpaid benefits and attorneys' fees. "[A]n ERISA plaintiff who prevails under § 502(a)(1)(B) in seeking an award of benefits may request prejudgment interest under that section as part of his or her benefits award." Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 208 (3d Cir. 2004). Prejudgment interest should be granted "unless exceptional or unusual circumstances exist

making the award of interest inequitable." Id. at 215 (quoting Anthius v. Colt Indus. Operating Corp., 971 F.2d 999, 1010 (3d Cir. 1992)). This case does not contain exceptional or unusual circumstances that would make an award of prejudgment interest inequitable, and therefore, Defendant must pay prejudgment interest as part of Plaintiff's benefit award.

With respect to attorneys' fees, while the Court may, in its discretion, award attorneys' fees to prevailing parties in actions brought under ERISA, "[t]here is no presumption that a successful plaintiff in an ERISA suit should receive an award [of attorneys' fees] in the absence of exceptional circumstances." McPherson v. Emps.' Pension Plan of Am. Re–Ins. Co., Inc., 33 F.3d 253, 254 (3d Cir. 1994). A district court must consider five factors in exercising its discretion in connection with fee applications: (1) the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending party; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the party's position. Id. (citing Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)). Because the parties' briefs do not address the applicability of these factors, determination at this point would be premature. Therefore, if Plaintiff seeks attorneys' fees, she must file a separate attorneys' fee petition with supporting documentation.

VI.     CONCLUSION

For the reasons stated, Plaintiff's motion for summary judgment will be granted in part and denied in part, and Defendant's motion for summary judgment will be denied. Plaintiff is entitled to recover retroactive disability benefits and prejudgment interest. Because neither party discussed Plaintiff's disability status under the "any occupation" standard applicable after twenty-four months of disability payments, the Court will remand the case to Defendant for a determination of Plaintiff's eligibility under that standard. An appropriate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.**
**United States District Judge**